Rodney CRADDOCK, Appellant,

v.

IMPERIAL CASUALTY AND INDEMNITY COMPANY, Appellee.

Court of Appeals of Kentucky.

March 13, 1970.

H. W. Roberts, Jr., Clinton, James Warren, Fulton, for appellant.

Farland Robbins, Mayfield, for appellee.

REED, Judge.

In this declaratory judgment action, the trial judge held that the automobile liability insurance policy issued by the appellee, insurer, did not afford coverage to the appellant, insured, because the event that gave rise to the assertion of liability against the insured was excluded from the insurance contract by an "injury to any employee" provision in the policy. The insured appeals. We hold that the judgment must be affirmed.

Rodney Craddock, the insured, operates a plumbing business in Clinton, Kentucky. He secured an automobile liability insurance policy from appellee undertaking to indemnify Craddock but containing an exclusion which recited that the policy did not apply to bodily injury to any employee of the insured "arising out of and in the course of employment by the insured" except in a certain instance not pertinent here. The exclusion also eliminated from coverage any obligation for which "the in-

sured or any carrier as his insurer could be held liable under any workman's compensation, unemployment compensation or disability benefits law, or under any similar law;".

Craddock employed Richard Cypret as a plumber's helper on plumbing jobs for which Craddock contracted. Craddock was the plumbing subcontractor on a job at the local stockyards. Cypret had been working for him as a plumber's helper paid by the hour on this particular project. The job site became muddy and this impeded Craddock's work. Apparently, Cypret regularly reported for work. Craddock told him that there was no work that could be performed. This condition continued for about two weeks. It appears that a truck Craddock used in the work on the project needed better tires that could negotiate mud. He had ordered these tires but the wrong size was sent and a reorder had to be made. The new tires were ordered from Standard Oil Company and were finally delivered to that company's Fulton, Kentucky, place of business. It further appears that Craddock needed some pipe joints to use on the job when the work resumed.

On March 26, Cypret made his regular call on Craddock and was told they could not work that day; thereupon, Cypret remarked that he needed to go to Fulton to see his mother-in-law; he asked Craddock if he could use the truck. Craddock replied that "I guess it will be all right; you can pick up some pipe and a couple of new tires." Craddock then called Standard Oil Company and told them he was sending a man for the tires. Cypret took the truck, drove to Fulton, picked up the tires and had them mounted. He visited his mother-in-law for about an hour and then picked up some one-inch galvanized pipe. On the return trip from Fulton to Clinton, Cypret ran off the road and was injured. No other car was involved in the accident.

Cypret sued Craddock alleging negligence on Craddock's part in providing him with a defective truck. Craddock's insurer disclaimed coverage or any duty to defend. Thereupon, Craddock brought this declaratory judgment action against the insurer to determine whether the policy obligated the insurer to afford Craddock a defense in Cypret's action and to indemnify him against any loss up to the limits of the policy caused by a successful recovery against him by Cypret.

The trial judge filed findings of fact and conclusions of law. He found that Cypret was an employee of Craddock at the time of the accident within the meaning of the exclusion provision of the insurance policy. He further held as a matter of law that Cypret at the time of the accident sustained injuries which arose out of and in the course of his employment by the insured. The trial court, therefore, declared that the insurer had no obligation to afford defense for Craddock nor pay any judgment that might result from Cypret's suit.

The trial court relied upon the case of Wilson v. Deegan's Adm'r, 282 Ky. 547, 139 S.W.2d 58. Both parties cite this case in this appeal. Craddock asserts that the instant case is clearly distinguishable and the insurer argues that the instant case is strictly analogous. We do not regard the Deegan case as determinative.

The issue presented is a narrow one. The exclusion clause undertakes to eliminate from coverage injury to an employee of the insured. The trial judge found upon undisputed evidence that at the time of the accident Cypret was an employee of Craddock. Although the insured takes issue with that determination the uncontradicted evidence established that there was a continuing relationship between Cypret and Craddock with particular reference to the stockyards job. On every day that Craddock could work on this job, Cypret worked for him as a plumber's helper. It is also clear that when working conditions on this job improved to the extent necessary for Craddock to resume work, Cypret would also resume work as his

**660**

helper. It is also significant that one of the purposes of Cypret's trip was to secure materials necessary to put Craddock's equipment in condition to resume work on the job and to have available material necessary for the performance of the work. We cannot characterize the finding of the trial judge that Cypret was an employee of Craddock as erroneous. The determination of Cypret's status is consistent with the rationale of such cases as National Union Indemnity Company v. Miniard, Ky., 310 S. W.2d 793; Kentucky Farm Bureau Mutual Ins. Co. v. Snell, Ky., 319 S.W.2d 462; State Farm Mutual Automobile Ins. Co. v. Shelton, Ky., 368 S.W.2d 734.

Assuming, therefore, that on the occasion of the accident Cypret was an employee of Craddock, the final element to be considered in the applicability of the exclusion is whether this employee sustained injury arising out of and in the course of employment by the insured. Craddock argues that since the principal purpose of Cypret's trip was a personal one, the injury did not arise out of or in the course of employment. Craddock asserts that the tasks performed by Cypret in the course of the trip were merely incidental. In this connection it is also argued that Craddock merely loaned the truck to Cypret and that Cypret then picked up the tires and the pipe as a sort of accommodation.

In the Deegan case, the issue involved was whether the employer was liable under the doctrine of respondeat superior. In that case, the employee was permitted to drive his employer's car to and from home during lunch periods. In the course of one of these trips he injured a third party. This court held that if it was established that the employer instituted the procedure of employees using company vehicles to go home for lunch and then to return to work for the purpose of furthering the employer's business in securing quicker return to work by the concerned employee, then the employee could be regarded as acting in the course of and within the scope of his employment when he negligently injured a

third party during the course of such a trip. Hence, the employer could be subject to liability to the injured third party under the doctrine of respondeat superior.

The same problem is presented in the field of workmen's compensation where the question often arises and is generally expressed in such terms as arising out of and in the course of employment, but more recently stated in terms of whether the employee injury was work-connected.

In Brewer v. Millich, Ky., 276 S.W.2d 12, and in Cove Ford Coal Company v. Newcomb, Ky., 343 S.W.2d 838, it was pointed out that the approach to be used in determining the relationship of employer-employee under the workmen's compensation act is broader and uses a more liberal construction favorable to the employee than the approach used in determining the relationship of master and servant or principal and agent in tort actions. This statement, however, when carefully analyzed, indicated nothing more than a policy of liberal construction in determining the status and relationship of the concerned parties to each other. It does not imply any significant difference, once the status relationship is established, in determining whether an event "arises out of and in the course of employment" as distinguished from the tort concept of "acting in the course of and in the scope of employment."

■ The consideration in the instant case is whether Cypret's injury arose out of and in the course of his employment by Craddock. The majority and better rule supported by logic appears to be that in this instance, in construing the insurance contract language, the workmen's compensation standard should be followed; although there is authority to the contrary. See Couch on Insurance 2d, sections 45:563 and 45:564, pp. 522, 523.

If this standard is to be applied, it appears to us that Cypret's trip on the occasion in question was a dual-purpose trip. One purpose was personal—to make a family visit. The other purpose was work-con-

nected—to pick up material necessary to perform the job. An analogous case to the instant one is Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181. There a plumber's helper was going to drive to a neighboring town to meet his wife. He was asked by his employer to fix some faucets there—a trifling job which would not in itself have occasioned the trip. He was injured in the course of the trip. It was held that he was engaged in a personal trip and that the business element was not a concurrent cause of the journey. The opinion was written by Judge Cardozo.

An excellent discussion of the opinion and its proper interpretation is found in Larson's Workmen's Compensation Law, Vol. 1, sections 18.12, 18.13, and 18.14. Therein it is pointed out that when a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the job purpose and would have been dropped in event of the failure of the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey. If permission to take a personal trip is made conditional on the performance of a business errand, the trip becomes a business trip. Matthews v. Naylor, 42 Cal.App.2d 729, 109 P. 2d 978.

When the foregoing approach is applied to the facts of this case, it is immediately apparent that the business purpose was at least a concurrent cause of the trip. The tires were immediately needed to permit resumption of work; the equipment also was to be used on the job. There was an element of urgency to resume the project. These circumstances indicate that a special trip for the business purpose would have been needed, if this trip had been cancelled. The injuries were sustained in an accident "arising out of and in the course of" employment by the insured. The exclusion applied.

The judgment is affirmed.

All concur.