**GAINES GENTRY THOROUGHBREDS/FAYETTE FARMS, Appellant,**

v.

Adan **MANDUJANO**; Honorable Edward Hays, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2011–SC–000298–WC.

Supreme Court of Kentucky.

May 24, 2012.

James Gordon Fogle, Ferreri & Fogle, PLLC, Louisville, KY, Counsel for Appellant, Gaines Gentry Thoroughbreds/Fayette Farms.

Kevin Beiting, Beiting Law Office, LLC, Lexington, KY, Counsel for Appellee, Adan Mandujano.

**OPINION OF THE COURT**

An Administrative Law Judge (ALJ) determined that injuries the claimant sustained in an automobile accident while returning to Kentucky from yearling sales held at Saratoga Springs, New York came within the course and scope of his employment with the defendant, Gaines Gentry Thoroughbreds, LLC (Gaines Gentry). The Workers' Compensation Board and the Court of Appeals affirmed. Appealing, Gaines Gentry argues that the ALJ erred by awarding benefits because the claimant's injury is not work-related under the dual purpose, positional risk, or traveling employee doctrine.

We affirm. The ALJ found reasonably that Gaines Gentry "instructed" the claimant to travel to Saratoga in a van with its yearlings in order to attend to them, travel that the farm manager admitted someone else would have undertaken if the claimant had not. Gaines Gentry paid the claimant to do so and left him on his own to find return transportation. The ALJ concluded properly under the circumstances that an accident that occurred while the claimant was returning to Kentucky to resume his usual duties for Gaines Gentry was work-related.

## I. BACKGROUND.

The claimant was born in 1982 and completed the ninth grade with no vocational or specialized training. He began working for Gaines Gentry's thoroughbred horse farm as a groom in 2005, for which he earned $412.00 per week at the time of his injury. The farm was located near Lexington, Kentucky. The claimant also showed horses for Eaton Sales, a business that sold horses on consignment. Gaines Gentry was owned by Olin Gentry and Thomas Gaines. Olin Gentry was associated with Eaton Sales (Eaton) and may have had an ownership interest in the business.

On August 2, 2007, Eaton, acting as Gaines Gentry's agent, had five or six of the farm's yearlings transported in vans operated by Sallee Horse Vans to the Saratoga Selected Yearlings Sale, which would

occur at Saratoga Springs, New York on August 6–7, 2007. The claimant accompanied the yearlings to Saratoga in the back of the van. Eaton sold the last of the yearlings on August 7, 2007 and returned to Kentucky when the sale ended, but the claimant stayed at Saratoga to work for another seller during the sales of lesser quality yearlings that took place thereafter. On August 12, 2007 he sustained skull fractures, cervical and lumbar spine injuries, and extensive dental injuries in a motor vehicle accident that occurred during his return to Kentucky.

Having recovered from his injuries, the claimant resumed his duties at Gaines Gentry in October 2007 and continued to be so employed when his workers' compensation claim was heard. He retained a 10% permanent impairment rating based on the spine. Gaines Gentry asserted that the accident was non-work-related because any possible duties he performed for the farm ended when its yearlings were sold.

## II. THE EVIDENCE.

The claimant testified at two depositions and again at the hearing, doing so with the aid of an interpreter. He stated that he requested permission from the farm's assistant manager to take time off in order to work at horse sales being held at Saratoga and in Florida, explaining that showing horses at the sales paid substantially more than his work at the farm. He received permission to work only at the Saratoga sales. The parties set no specific date for him to return.

The claimant stated that he planned to travel to Saratoga in his truck, but John Hayes, the farm manager, asked him to ride in the back of the van with the farm's yearlings in order to look after them. He agreed to do so. Gaines Gentry paid him $200.00 for the trip and Eaton paid him an additional $250.00. After arriving at Saratoga, he worked for Eaton for an additional three to four days, for which he received $200.00 per day; extra for working at night; and food and lodging. His work for Eaton ended on August 7, 2007.

The claimant testified that he stayed at Saratoga after the Selected Yearlings Sale in order to work during the sales of lesser quality yearlings that followed. During that time, he worked three to four days showing horses for Paramount Sales and was paid $200.00 per day. When the work ended, he obtained a ride back to Kentucky with a friend. He explained that neither Gaines Gentry nor Eaton offered to provide or pay for return transportation to Kentucky, leaving him to make his own arrangements. He acknowledged, however, that he could have returned to Lexington in one of the Sallee vans that brought yearlings to the sale.

John Hayes, Gaines Gentry's farm manager, was deposed and testified at the hearing. He stated that the claimant requested time off to go to the Saratoga Sales, a situation that he equated to a request for a leave of absence. Hayes stated that Gaines Gentry made a practice of having an employee accompany its horses in the van, even if the van company also had its own employee do so, because they were very valuable. Knowing the claimant needed a ride to Saratoga, Hayes told him that he would like him to ride in the van with the farm's yearlings. He stated that he gave the claimant $200.00 for expenses. Hayes testified that the claimant's duties for Gaines Gentry ended when the van reached Saratoga and that he could have traveled at no expense on any of the Sallee vans that returned to Kentucky throughout the sales. He did not know how the claimant planned to travel back to Kentucky because he did not know how long he would work at the sales.

J. Reiley McDonald, Eaton's managing member, testified when deposed that Eaton sold Gaines Gentry's yearlings at the Saratoga sale held in August 2007. He stated that Eaton hired contract laborers to handle and show yearlings after they arrived at Saratoga. Eaton did not view the laborers as being employees but considered them to be independent contractors, hired for short-term work. The claimant, like other such laborers, was a skilled horseman and did not require instructions concerning how to show the yearlings. He worked for Eaton from August 3 through August 7, 2007, for which Eaton paid him $1,200.00.

The claimant argued that the accident and resulting injuries were work-related for several reasons: the travel that produced them was a regular incident of the employment; travel to and from Saratoga involved an exception to the going and coming rule; and his employment exposed him to the risk of being sent to a horse sale without being offered return transportation.

Gaines Gentry maintained that the claimant was not performing any duty in relation to his employment when he was injured; that he had worked for two other businesses during an unpaid leave from the employment; and that no legal doctrine extended coverage to what was a non-work-related accident.

### III. THE ALJ'S DECISION.

After summarizing and making specific findings from the evidence, the ALJ determined that the claimant was Gaines Gentry's employee and was acting within the course and scope of his employment when he traveled to Saratoga to accompany the farm's yearlings. He was also doing so during the return travel that resulted in the accident and injuries on August 12, 2007.

The ALJ found specifically that Gaines Gentry had business interests at Saratoga; "instructed" the claimant to travel to Saratoga; "instructed" him to do so "in the horse van in order to be close to the horses and to attend to their care;" and paid him $200.00 for doing so. Moreover, both parties contemplated that he would be assisting Eaton as a showman during the Selected Yearlings sale; be paid by Eaton; and return to his duties at the farm at an unspecified date. The ALJ found that the claimant's work for Paramount "was not inconsistent with and did not conflict with the expectations, instructions, or interests of Gaines Gentry" and that Gaines Gentry left him on his own to find return transportation to Kentucky.

Rejecting Gaines Gentry's argument that the claimant ceased to act within the course and scope of his employment upon his arrival at Saratoga, the ALJ noted that the injury did not occur while he was working for Eaton or Paramount but during the "necessary and inevitable" act of completing a journey that Gaines Gentry initiated. Noting that the claimant was "on his own" with respect to finding a ride back to Kentucky, which the witnesses stated was consistent with industry practice, the ALJ determined that his return travel to Kentucky was a customary part of the employment and compensable.[1]

The ALJ determined that the accident and resulting injuries were work-related under the traveling employee exception to the going and coming rule and the positional risk doctrine. Addressing the traveling employee exception, the ALJ noted that the accident occurred during the claimant's return to Kentucky rather than during a deviation from the employment.

1.  *McCracken County Health Spa v. Henson,* 568 S.W.2d 240 (Ky.App.1977).

Addressing the positional risk doctrine, the ALJ determined that the claimant's employment with Gaines Gentry exposed him to the risk of injury by placing him in the position of having to find a means of transportation back to Kentucky.

## IV. STANDARD OF REVIEW.

■ An injured worker bears the burden of proof and risk of non-persuasion before the ALJ with regard to every element of the claim.[2] KRS 342.285 designates the ALJ as the finder of fact in workers' compensation cases. It permits an appeal to the Board but provides that the ALJ's decision is "conclusive and binding as to all questions of fact" and, together with KRS 342.290, prohibits the Board or a reviewing court from substituting its judgment for the ALJ's "as to the weight of evidence on questions of fact." Thus, KRS 342.285 gives the ALJ the sole discretion to determine the quality, character, and substance of evidence.[3] As fact-finder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof.[4] KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;"[5] whether the decision "was procured by fraud;"[6] or whether the decision was erroneous as a matter of law.[7] Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion.

■ The courts have construed KRS 342.285 to require a party who appeals a finding that favors the party with the burden of proof to show that no substantial evidence supported the finding, i.e., that the finding was unreasonable under the evidence.[8] A party who fails to meet its burden of proof before the ALJ must show that the unfavorable finding was clearly erroneous because overwhelming favorable evidence compelled a favorable finding, i.e., no reasonable person could have failed to be persuaded by the favorable evidence.[9] Evidence that would have supported but not compelled a different decision is an inadequate basis for reversal on appeal.[10]

## V. ANALYSIS.

■ *Craddock v. Imperial Casualty and Indemnity Co.*[11] set forth the test for determining whether a trip that serves both a business and personal purpose is work-related. A trip is personal under the test if it would have been made without regard to the business purpose and would have

2. See *Roark v. Alva Coal Corporation*, 371 S.W.2d 856 (Ky.1963); *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky.App.1984); *Snawder v. Stice*, 576 S.W.2d 276 (Ky.App.1979).

3. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky.1985).

4. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky.1977).

5. KRS 342.285(2)(a).

6. KRS 342.285(2)(b).

7. KRS 342.285(2)(c), (d), and (e). *See also* *American Beauty Homes Corp. v. Louisville &* *Jefferson County Planning & Zoning Commission*, 379 S.W.2d 450, 457 (Ky.1964).

8. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky.1986); *Mosely v. Ford Motor Co.*, 968 S.W.2d 675 (Ky.App.1998); *REO Mechanical v. Barnes*, 691 S.W.2d 224 (Ky.App.1985).

9. *Id.*

10. *McCloud v. Beth–Elkhorn Corp.*, 514 S.W.2d 46 (Ky.1974).

11. 451 S.W.2d 658, 661 (Ky.1970).

been dropped in the event of the failure of the private purpose. The trip is work-related "if it would have been made regardless of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey." [12]

■ Gaines Gentry argues that the Board and Court of Appeals engaged in fact-finding when attributing to the ALJ an implicit finding that the claimant would have made the trip to Saratoga in spite of the failure or the absence of a private purpose. Moreover, it characterizes such a finding as speculative because the ALJ failed to address the issue and asserts that extending the dual purpose doctrine to include the accident in which the claimant was injured is an "unprecedented" and "unwarranted expansion" of the doctrine. Gaines Gentry continues to maintain that the claimant's purpose in traveling to Saratoga was "entirely personal;" that he departed from his employment duties as early as when he began traveling to Saratoga but no later than when he stopped showing the farm's horses for Eaton; and that no substantial evidence showed he was acting on behalf of or benefiting Gaines Gentry at the time of his injury. We disagree.

The ALJ made no reference to the dual purpose doctrine, but the factual findings support a conclusion under the doctrine that the travel that produced the claimant's injury came within the course and scope of his employment with Gaines Gentry. Contrary to what Gaines Gentry

would have us believe, the ALJ found reasonably from the conflicting evidence that Hayes "instructed" the claimant to travel to Saratoga in the van with the farm's yearlings "in order to be close to the horses and to attend to their care" and paid him to do so. The ALJ also found reasonably that having an employee travel in the van with the horses served Gaines Gentry's interests, and Hayes admitted that he would have sent another employee to accompany them had the claimant not done so. Although the claimant may have planned initially to travel to Saratoga for purely personal reasons and although he conducted personal business with Gaines Gentry's permission during at least part of his time at Saratoga, the purpose of his travel to Saratoga became work-related before he embarked on the journey.

■ Kentucky applies the traveling employee doctrine in instances where a worker's employment requires travel.[13] Grounded in the positional risk doctrine,[14] the traveling employee doctrine considers an injury that occurs while the employee is in travel status to be work-related unless the worker was engaged in a significant departure from the purpose of the trip. The ALJ did not err by concluding that the traveling employee and positional doctrines permitted compensation in this case.

The claimant's accident did not occur while he was working for Eaton or Paramount but while he was traveling from Saratoga back to Lexington. As found by the ALJ, the parties contemplated that he would work at the sales and return to his

---

12. *Id. See also,* Arthur Larson and Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 16.02 (2009).

13. *See Olsten–Kimberly Quality Care v. Parr,* 965 S.W.2d 155, 157 (Ky.1998); *see also* Arthur Larson and Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 14 (2009).

14. *See Corken v. Corken Steel Products, Inc.,* 385 S.W.2d 949 (Ky.1964) (when employment places a worker in what turns out to be a dangerous place, an injury that results is work-related).

duties at the farm when the sales ended. The accident in which he was injured occurred during the "necessary and inevitable" act of completing the journey he undertook for Gaines Gentry. In other words, travel necessitated by the claimant's employment placed him in what turned out to be a place of danger and he was injured as a consequence. Having neither provided nor specified a means of return transportation to Kentucky, Gaines Gentry cannot complain that it had no control over the means the claimant selected. The ALJ found nothing unreasonable in his choice of transportation and Gaines Gentry points to nothing that would have compelled a finding to the contrary.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.