RENDERED: FEBRUARY 24, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0070-WC

DEE WHITAKER CONCRETE                                          APPELLANT


V.
ON APPEAL FROM COURT OF APPEALS
NO. 2020-CA-0639
WORKERS' COMPENSATION NO. WC-17-66423


AUSTIN ELLISON; HONORABLE                                      APPELLEES
RICHARD E. NEAL, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD


**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING**

Austin Ellison was employed by Dee Whitaker Concrete (Whitaker Concrete) as a general laborer. While leaving a jobsite and traveling back to the employer's premises, Ellison was injured in an automobile accident. Whitaker Concrete denied Ellison's workers' compensation claim, asserting that injuries sustained while going to or returning from the workplace are not compensable. The Administrative Law Judge (ALJ) determined that the "service to the employer" and "traveling employee" exceptions to the "going and coming" rule were applicable and awarded disability benefits. On appeal, the Workers' Compensation Board (Board) and Court of Appeals affirmed. Whitaker Concrete argues that the Court of Appeals erred as a matter of law by misapplying controlling precedent regarding these exceptions.

## FACTS AND PROCEDURAL HISTORY

Whitaker Concrete is a small concrete company with a shop located next to the owner's home in Smithfield, Kentucky. Whitaker Concrete employees met at the shop each morning to obtain the tools necessary for jobs to be worked on that day, then traveled to the worksites. The employees were paid from the time they arrived at the shop until the job was finished at the end of the day. Dee Whitaker testified that the employees were paid for time spent traveling to a jobsite but were not paid for their travel time back to the shop.

Austin Ellison began working for Whitaker Concrete in 2014. Each day Ellison reported to Whitaker Concrete's shop and returned to Whitaker Concrete's shop. Very seldom did he report directly to the jobsite. On August 4, 2017, Ellison arrived at the shop in Smithfield. Dee Whitaker was at the shop that morning and traveled with his employees to the jobsite in Danville, an approximately two-hour drive. Employees were transported to the jobsite in two trucks. The truck Ellison rode in was owned by Whitaker's son, although it was used on the job.[1] On the way to the jobsite, Whitaker and the employees stopped to fuel the trucks and get something to eat. They finished the trip to Danville and worked until it started raining. When it was apparent the rain

---

[1] Dee Whitaker testified that concrete tools were in his son's truck. Whitaker Concrete had been performing concrete work at the same jobsite in Danville for approximately six weeks on the date of the injury. Whitaker testified that during those six weeks, Ellison never drove himself directly to the jobsite and always met at Whitaker Concrete to travel to Danville, during which time he also rode in the company-owned vehicles.

would not stop, the employees started back toward the Whitaker Concrete shop in Smithfield.

While returning to the shop, the truck Ellison rode in left the road and overturned. Ellison, who was not wearing a seatbelt, was thrown from the vehicle and sustained multiple injuries. He was taken to the University of Kentucky Medical Center via helicopter. As a result of the accident, Ellison suffered acute fractures of the nasal bone, loss of several teeth, a fractured rib and a compression fracture to the T3 spinal vertebrae, collapsed lung and lacerations to his face. Ellison underwent several procedures to remove and repair his teeth including a bone graft and also underwent treatment to alleviate his neck and back pain.

On November 20, 2017, Ellison filed a workers' compensation claim alleging work-related injuries from the motor vehicle accident. Whitaker Concrete argued that Ellison's injuries were not work-related pursuant to Kentucky Revised Statute (KRS) 342.650(7) because he was carpooling at the time of the accident. On August 7, 2018, the ALJ entered an Interlocutory Opinion and Order finding that Ellison fell within the traveling employee and the service to the employer exceptions to the going and coming rule. The ALJ also determined that KRS 342.650(7) only applies to employees carpooling from their residences to their places of employment.

On December 9, 2019, the ALJ rendered an Opinion and Order awarding Ellison temporary total disability benefits, permanent partial disability benefits, and medical benefits. The ALJ reaffirmed his initial findings that Ellison fell

3

within the traveling employee exception to the going and coming rule because his work required travel away from the employer's premises and that travel placed him in danger. The fact that the employees, including Ellison, intended to stop for lunch on the way home did not constitute a distinct departure because it was on the way home and they had yet to arrive. Additionally, the ALJ determined that the service to the employer exception applied because the travel was clearly a service to Whitaker Concrete in furtherance of its business interests. The ALJ again disagreed with Whitaker Concrete that the carpool exception barred Ellison's claim. No petition for reconsideration was filed.

The Board held that the ALJ did not err in finding Ellison's injuries compensable. The carpool exception does not apply, and Whitaker Concrete derived "some benefit," pursuant to the analysis applied in *Receveur Construction Co. v. Rogers,* 958 S.W.2d 18, 21 (Ky. 1997), from its employees meeting at the shop before embarking to the jobsite. The Board affirmed the Interlocutory Opinion and Order and the December 9, 2019, Opinion, Award and Order of the ALJ.

The Court of Appeals held that the ALJ correctly determined that Ellison was placed in danger during work-required travel and the intent to stop at a restaurant on the way back to the garage did not constitute a distinct departure. Although the use of carpooling to and from jobsites was convenient for Ellison, the ALJ did not err in his determination that it was primarily a benefit to the employer. Therefore, both the traveling employee and service to

4

the employer exceptions were correctly applied by the ALJ.  The Court of Appeals affirmed the Board.

## ANALYSIS

The going and coming rule is well-established.  Generally,

> injuries sustained by workers when they are going to or returning from the place where they regularly perform the duties connected with their employment are not deemed to rise out of and in the course of the employment as the hazards ordinarily encountered in such journeys are not incident to the employer's business.

*Id.* at 20.  This rule is subject to several exceptions, two of which are applicable to this case: the traveling employee exception and the service to the employer exception.  Whitaker Concrete argues that the Court of Appeals erred as a matter of law by misapplying controlling precedent regarding these exceptions.  But the determinations of whether Ellison was a traveling employee or was performing a service to the employer are both issues of fact.  *Howard D. Sturgill & Sons v. Fairchild,* 647 S.W.2d 796, 798 (Ky. 1983).  Because Ellison satisfied his burden of proving his injuries were work-related and compensable, Whitaker Concrete must show that no substantial evidence supported the ALJ's findings.  *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky. 1986).  Substantial evidence is evidence of "substance and relevant consequence" having fitness to induce conviction in the minds of reasonable people.  *Miller v. Tema Isenmann, Inc.,* 542 S.W.3d 265, 270 (Ky. 2018).

## I.  The Traveling Employee Exception Applies

The traveling employee exception was explained in *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujana,* 366 S.W.3d 456, 462-63 (Ky. 2012):

> Kentucky applies the traveling employee doctrine in instances where a worker's employment requires travel.  Grounded in the positional risk doctrine, the traveling employee doctrine considers an injury that occurs while the employee is in travel status to be work-related unless the worker was engaged in a significant departure from the purpose of the trip.

(Citations omitted).  In *Gaines Gentry,* the employer and employee agreed that the employee would travel to yearling sales and return to his duties at the employer's Lexington farm when a sale ended.  *Id.*  The employee was injured traveling back to Lexington from a sale.  *Id.* at 462.  Upholding the compensability of his workers' compensation claim, the Court reasoned that

> [t]he accident in which he was injured occurred during the "necessary and inevitable" act of completing the journey he undertook for Gaines Gentry.  In other words, travel necessitated by the claimant's employer placed him in what turned out to be a place of danger and he was injured as a consequence.

*Id.* at 463.  The same reasoning applies here.

Based on the evidence presented, Ellison's status as a traveling employee qualifies as an exception to the going and coming rule.  His work required travel away from the employer's premises.  Except for loading and unloading the trucks with equipment and tools, all of Ellison's work for Whitaker Concrete occurred away from the premises on various jobsites.  The fact that employees were not paid for their time while traveling back to the employer's

6

premises does not change this conclusion. The return trip was a necessary and inevitable act of returning from the out-of-town jobsite and was necessitated by the furtherance of the employer's business interests. Additionally, the fact that the employees intended to stop at a restaurant for lunch does not constitute a distinct departure because the restaurant was on their route home, and they never made it to the restaurant. Ellison's employment was the reason for his presence at what turned out to be a place of danger. *Black v. Tichenor,* 396 S.W.2d 794, 797 (Ky. 1965).

Whitaker Concrete argues that the traveling employee exception does not apply because that travel status only applies to employees whose work entails travel away from their usual place of employment and asserts that Ellison's usual place of employment was the jobsite in Danville. Admittedly, no concrete work was performed at the Whitaker Concrete shop where employees met to travel to jobsites. But Whitaker Concrete and its employees, including Ellison, had met at Whitaker Concrete and traveled to the Danville jobsite for approximately six weeks prior to the accident.

> Even more appropriate to the case at bar is the idea that when travel is a requirement of employment and is implicit in the understanding between the employee and the employer at the time the employment contract was entered into, then injuries which occur going to or coming from a work place will generally be held to be work-related and compensable, except when a distinct departure or deviation on a personal errand is shown.

*Olsten-Kimberly Quality Care v. Parr*, 965 S.W.2d 155, 157 (Ky. 1998) (quotations and citations omitted). Whitaker Concrete employees meeting at the company's shop and traveling together to the Danville jobsite was an

7

implicit part of the employment arrangement. Whitaker acquiesced to this practice by providing company vehicles and paying for the gas in the vehicles that traveled to the jobsites, including his son's truck in which Ellison was a passenger on the date of the accident. This testimony constitutes substantial evidence. As such, Ellison qualifies as a traveling employee and therefore his workers' compensation claim is not barred by the going and coming rule.

## II.     The Service To the Employer Exception Applies

While the applicability of the traveling employee exception alone is sufficient to uphold the ALJ's decision and award, the ALJ, Board and Court of Appeals each addressed the service to the employer exception, determining also that Ellison was providing a service to Whitaker Concrete when injured. In *Fortney v. Airtrain Airways,* 319 S.W.3d 325, 329 (Ky. 2010), the Court explained this exception to the going and coming rule:

> The rule excluding injuries that occur off the employer's premises, during travel between work and home, does not apply if the journey is part of the service for which the worker is employed or otherwise benefits the employer.

As noted, we will only reverse the ALJ if this finding was not supported by substantial evidence and is thus erroneous as a matter of law. *Francis,* 708 S.W.2d at 643.

The ALJ determined that Ellison's travel was clearly a service to Whitaker Concrete because by traveling together, Whitaker Concrete was able to ensure that its employees would get to the jobsite on time and as a group. This timeliness was essential because their arrival was coordinated with the arrival of the concrete. According to the ALJ, this type of work appears to be more

8

effectively performed when all workers arrive at the same time as opposed to filtering in one by one.

The ALJ likened this case to *Receveur,* 958 S.W.2d 18, but noted some distinctions. In *Receveur,* the employee resided in Campbellsville and the employer's office was in Louisville. The employee traveled in a company-issued vehicle to various remote jobsites around the region. *Id.* He was not compensated for his time traveling from home to the office, but he was paid for any travel time between the office and a jobsite. *Id.* After working at a jobsite in Clarksville, Indiana the employee went back to the employer's office to unload rubbish. *Id.* at 19. While driving home the employee was involved in a fatal accident. *Id.* In holding his injuries compensable, the Court focused on the benefit the employer received generally because the employee's use of the company truck allowed the employee to better perform his job requirements. *Id.* at 21. Additionally, the use of the company truck as transportation between the employee's home and jobsite allowed the employee to begin his duties earlier and to remain productive longer. *Id.* While the use of the company truck was convenient for the employee, "it was primarily of benefit to the employer." *Id.*

Ellison did not travel in a company-owned vehicle on the day in question but instead a vehicle owned by Whitaker's son that was used on the job. Ellison's employment encompassed traveling to sometimes remote and non-permanent jobsites in order to pour concrete. His travel from the employer's premises to various jobsites was a service to the employer and benefitted the

employer by furthering its business. Whitaker Concrete employees met at the business to load trucks with tools and equipment before traveling with the equipment to the jobsite. Ellison testified that sometimes when employees met at Whitaker Concrete prior to traveling to a jobsite they would discuss a plan for the day. Six employees met at Whitaker Concrete on the morning of the accident and traveled to the jobsite in Danville in two trucks. Ellison also testified that on the day of the accident he "had to meet at the shop" early that morning and that he seldom drove himself directly to a worksite. Whitaker testified that employees were permitted to drive themselves to the jobsite if they desired, but it is clear that employees routinely met at the shop and rode together.

Whitaker Concrete argues that this case is virtually identical to the facts in *Brown v. Owsley,* 564 S.W.2d 843 (Ky. 1978), in which employees were injured while traveling back to the employer's premises, their central meeting point, from a jobsite. While *Brown* and the present case share similarities, the distinguishing fact is that in *Brown,* the employer had no knowledge and did not acquiesce to the employees carpooling to jobsites. Here, Whitaker Concrete knew that employees met at the company premises and traveled together to jobsites. Whitaker himself met his employees at the shop that morning and traveled with them to the jobsite. He rode in a truck with two of his employees.

Reviewing the testimony as a whole, the travel was clearly a service to Whitaker Concrete. Whitaker was abundantly aware of his employees' travel arrangement and acquiesced to such by providing some vehicles and gas. The

10

testimony of Ellison and Whitaker constitutes substantial evidence that supported the ALJ's conclusion that this travel arrangement benefitted Whitaker Concrete.

## CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

James Gordon Fogle
Fogle Keller Walker, PLLC

COUNSEL FOR APPELLEE:

James Richard Martin II
Morgan & Morgan Kentucky, PLLC

ADMINISTRATIVE LAW JUDGE:

Honorable Richard E. Neal

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Chairman