RENDERED: OCTOBER 27, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

### NO. 2023-CA-0695-WC

JOSEPH LEE                                              APPELLANT


                       PETITION FOR REVIEW OF A DECISION
v.              OF THE WORKERS' COMPENSATION BOARD
                          ACTION NO. WC-22-00320


W.G. YATES & SONS
CONSTRUCTION CO.;
HONORABLE W. GREG HARVEY,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD OF KENTUCKY                                APPELLEES


### OPINION
### REVERSING AND REMANDING

** ** ** ** **


BEFORE: CETRULO, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE: Joseph Lee ("Lee") petitions for review of a decision of the

Workers' Compensation Board ("Board") affirming an administrative law judge's

("ALJ") orders dismissing Lee's claim for benefits resulting from a motorcycle

accident. Because the ALJ and the Board erred as a matter of law in holding that Lee's injuries were not compensable under the "going and coming" rule, we reverse and remand.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Lee is a permanent legal resident of Louisiana where he resides with his wife and daughter. He has worked as a pipefitter, welder, and in the construction trade. Yates & Sons Construction Co. ("Yates") is a construction company based in Mississippi which accepts jobs all over the country. Yates hired Lee as a general foreman for an environmental job upgrading the ash system at the Eastern Kentucky Cooperative Plant in Maysville, Kentucky. Lee reported to a project manager, Charla Davis ("Davis"), the division office manager and HRS manager at Yates for twenty years. Davis was located in Jacksonville, Florida. She fell under the supervision of yet another industrial office located in Birmingham, Alabama. A temporary office was the only physical presence maintained by Yates at the site of the Maysville project.

Lee was hired on January 27, 2020, and scheduled to work on the Maysville job until its completion. The evidence showed that the hiring process was initiated and conducted by telephone while Lee was still in Louisiana. Lee first spoke with Ken Milby, who was already working in Kentucky. Davis testified

that Lee was hired solely for the Maysville project and that he would have been offered the position over the phone before he traveled there.

Upon being offered the job, Lee pulled a travel trailer with his pick-up truck and a motorcycle to a campground located in Aberdeen, Ohio, a few miles from the work site, where he stayed for the entirety of his employment for this job. Notably, Lee maintained his residence in Louisiana and maintained a Louisiana driver's license. Lee was not reimbursed for his expenses to travel to the job site; however, to compensate Lee for food and lodging expenditures, Yates provided Lee a $100 daily per diem. As the Maysville project neared completion, Yates approached Lee regarding employment for a future project in Hattiesburg, Mississippi.

On September 19, 2020, Lee clocked out of work in the early hours of the morning. That afternoon, around 4:30 p.m., Lee left his trailer to join a friend for a burger. He was scheduled to begin work later that evening between 6 p.m. and 7 p.m. En route to the restaurant a vehicle came into Lee's lane, striking him. The collision resulted in the loss of Lee's left leg below the knee and a frozen left elbow.

Lee filed a workers' compensation claim, which by agreement of the parties was bifurcated to determine the threshold issue of whether the injury occurred within the course and scope of Lee's employment. The ALJ concluded

-3-

that it did not, which rendered moot the other issues, including timeliness of notice. The ALJ based his conclusion on finding that Lee had "relocated" to Aberdeen and for that reason, the "going and coming" rule meant that his injury was not compensable. The ALJ further found that neither of the exceptions to the "going and coming" rule applied in Lee's case. Both parties filed petitions for reconsideration. Lee contended that he was a traveling employee exempted from the going and coming rule. He challenged the ALJ's finding that he had "relocated" to Aberdeen, pointing out that he maintained his permanent residence in Louisiana; maintained his Louisiana driver's license; lived in a campground in a "travel trailer"; was paid a per diem; and had no intention of remaining in Aberdeen beyond the duration of his job with Yates.

The ALJ sustained both petitions in part, making additional findings that although the terms of Lee's employment contract with Yates did not specifically require him to relocate, once Lee had arrived in Aberdeen, Ohio, the only travel required of him was to and from a static jobsite in Maysville. The ALJ did not alter his conclusion that Lee's injury was not compensable. The Board unanimously affirmed the ALJ's opinion that the injury did not occur within the course and scope of employment and consequently made no ruling on the timeliness of notice, holding that the issue was moot. Lee now appeals to this

Court as a matter of right.  Having reviewed the record and the law, we reverse and remand for further proceedings.

## STANDARD OF REVIEW

The ALJ has "the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence." *Bowerman v. Black Equipment Co*., 297 S.W.3d 858, 866 (Ky. App. 2009).  "If the reviewing court concludes the rule of law was correctly applied to facts supported by substantial evidence, the final order of the agency must be affirmed." *Kentucky Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238, 246 (Ky. 2012) (citing *Brown Hotel Co. v. Edwards*, 365 S.W.2d 299, 302 (Ky. 1962)).  "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co*., 474 S.W.2d 367, 369 (Ky. 1971) (citation omitted).  "However, a reviewing court is entitled to substitute its judgment for that of the agency where the agency's ruling is based on an 'incorrect view of the law.'" *Fresenius Medical Care Holdings, Inc. v. Mitchell*, 507 S.W.3d 15, 19 (Ky. App. 2016) (quoting *Kentucky Bd. of Nursing v. Ward*, 890 S.W.2d 641, 642 (Ky. App. 1994)).  Thus, our review of a decision of the Board is limited to whether "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause

gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Regarding proper interpretation of the law or its application to the facts, we are not bound by the decisions of an ALJ or the Board. In either case, the standard of review is *de novo*. *Bowerman*, 297 S.W.3d at 866. With these standards in mind, we now turn to the merits of the present case.

## ANALYSIS

The Workers' Compensation Act compensates workers for injuries arising out of and in the course and scope of their employment. Kentucky Revised Statutes ("KRS") 342.0011(1). However, when an employee is injured while commuting from home to work or from work to home, compensation is denied.

> The general rule is that injuries sustained by workers when they are going to or returning from the place where they regularly perform the duties connected with their employment are not deemed to arise out of and in the course of the employment as the hazards ordinarily encountered in such journeys are not incident to the employer's business.

*Receveur Const. Company/Realm, Inc. v. Rogers*, 958 S.W.2d 18, 19 (Ky. 1997). This rule is known as the "going and coming" rule, and it applies to bar compensation for injuries sustained while the employee is traveling to and from a fixed place of employment. *Husman Snack Foods Co. v. Dillon*, 591 S.W.2d 701 (Ky. App. 1979).

Kentucky courts have recognized several exceptions to this rule, including the "traveling employee" and the "service to the employer" exceptions. *See Black v. Tichenor*, 396 S.W.2d 794, 797 (Ky. 1965); *Receveur*, *supra*.

### i. The "traveling employee" exception

The traveling employee exception was outlined in *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456 (Ky. 2012). In *Gaines Gentry*, a groom employed at a horse farm in Lexington, Kentucky, requested time off to work at horse sales in New York, where he would be paid substantially more than at the farm. His employer agreed and asked him to travel to the sales with the farm's horses in order to look after them. The groom agreed and the employer paid him $200 for the trip. After working at the sales in Saratoga Springs, New York, for several days, the groom was injured in an automobile accident on the return journey to Lexington. The Court, holding that the injury was indeed work-related, explained:

> Kentucky applies the traveling employee doctrine in instances where a worker's employment requires travel. Grounded in the positional risk doctrine, the traveling employee doctrine considers an injury that occurs while the employee is in travel status to be work-related unless the worker was engaged in a significant departure from the purpose of the trip.

*Id.* at 462 (footnotes omitted).

In his initial opinion and order, the ALJ found that the travel exception did not apply to Lee's case, stating:

> I find he was actually residing in Aberdeen, Ohio and his work did not require him to travel away from his regular place of employment located in Maysville, Kentucky. As the injury occurred while he was riding his motorcycle to a burger joint, it is clear he was not on a business trip at the time, but instead on a personal venture to eat prior to going to work.

However, when the ALJ made additional findings upon Lee's motion for reconsideration, he emphasized that Lee was a permanent legal resident of the state of Louisiana. "The ALJ did not find Lee abandoned his residency in Louisiana or procured an Ohio or Kentucky driver's license. Further, the record does not dispute he was paid a per diem[.]" Confusingly, the ALJ, following this recitation of facts, concluded Lee "relocated to Aberdeen, Ohio," and doubled down on his conclusion that the traveling exception does not apply, and that the dismissal of his claim was warranted. Throughout his opinion, as affirmed by the Board, the ALJ relied on the interpretation of Lee's living situation as a "relocation," although neither party contests the facts as outlined above. And, while Lee provides extra-jurisdictional support for the premise that his claim should be upheld, we need look no further than to the thoughtful application of the law to the facts in *Gaines Gentry* to resolve this issue.

The ALJ maintains Lee's "relocation" makes application of the traveling doctrine inappropriate. However, we are hard pressed to find any statute or case wherein "relocation" is defined, much less used as a reason to deny a claim. The only distinguishing factor between the situation in *Gaines Gentry*, and the facts in consideration by this Court, is the length of time the employees remained out-of-state. The ALJ reiterates throughout his opinion that the controlling fact is the "relocation" of Lee. We disagree. It is inconsequential where Lee chose to lay his head. The significant controlling factor was not where he temporarily resided but that, in order to accomplish the job for which he was hired, he was required to temporarily lodge somewhere other than his permanent residence. It is absurd that an employer would expect his employee, a resident of Louisiana, to travel daily to the job site in Maysville, Kentucky. And, no one has argued that such an unreasonable condition was an expectation of employment. In fact, in consideration of the fact that Lee would require lodging, the company paid him a daily per diem of $100 for food and lodging.[1] Moreover, Davis, Lee's supervisor, testified that the crux of the company's business plan was based on recruitment of workers from all over the country:

---

[1] The General Services Administration defines per diem as "an allowance for lodging, meals, and incidental expenses. The U.S. General Services Administration (GSA) establishes the per diem reimbursement rates that federal agencies use to reimburse their employees for subsistence expenses incurred while on official travel within the continental U.S." *Frequently Asked Questions, Per Diem*, U.S. GENERAL SERVICES ADMINISTRATION, https://www.gsa.gov/travel/plan-book/per-diem-rates/faq#1 (last visited Oct. 19, 2023).

>We would have called him or one of the other
>supervisors or someone from the site.  Word of mouth,
>we do a lot of hiring of people that have worked with
>other people before by reference and whatnot.
>
>So, we would have called him, offered him a position and
>talked to him and if it came out where we offered him a
>position in Kentucky he would have went to the job site
>there and we would have hired him on if he showed up.
>That's how we hire all of our field workforce.

It is inconceivable that the law would allow a worker to be recruited as out-of-state talent; to work at a job hundreds of miles away from their home; to be paid a per diem for food and lodging; and then to simply be denied a workers' compensation claim by designating him as a non-traveling employee because he lodged in one location for eight months of work.  Clearly, Lee was a traveling employee.

In contrast, the Board's opinion never mentions "relocation" in affirming the ruling of the ALJ.  However, it applied the same logic when comparing the facts in *Standard Oil Company (Kentucky) v. Witt*, 283 Ky. 327, 141 S.W.2d 271 (1940), to the case *sub judice*.  Witt was a construction foreman who, like Lee, did not work from the main office but at various job sites some distance from home.  Specifically, Witt worked for a company based in Louisville, while the greater part of his time was spent on company business outside Louisville.  He was paid a daily per diem for room and board when away from home on business.  Upon Witt's death as a result of a fire which broke out in his lodging, the company discovered Witt would make the Mitchell Tourist Home in Barbourville his

temporary abode anytime he had work in that area of the Commonwealth. In other words, Witt "relocated" to the lodging of his choice. Like Yates, Standard Oil insisted Witt's death did not occur in the course of his employment because he maintained a "temporary place of abode by choice." *Id.* at 274. In upholding the decision for the claimant, the Court held:

> Witt met his death during the course of his employment. That is clear. His employment was such that he was required to spend considerable time away from home. Provision was made for him to stay in hotels when away from home, though only $2.50 per day was allowed for his meals and his lodging. While the selection of his stopping places was left to him, it was known that certain risks were necessarily involved in his stopping at small town and inexpensive hotels. He was subject to call at all times and when he met his death he was at a place where he was expected and required to be by the nature of his employment. While hotel fires may be infrequent, so are many peculiar accidents in which workers receive compensable injuries. Certainly[,] Witt's employment subjected him to risks greater than those to which the general public is ordinarily subjected.

*Id*. at 275-76.

The Board attempted to distinguish Lee's case by the fact that Lee reported to the same job site every day. This analysis is a misunderstanding of *Witt*. Clearly, the Court cared little about Witt's choice of "temporary abode" and placed its emphasis on the nature of his travel. Here, as in *Witt*, the employee's injury arose out of, and in the course of, his employment.

-11-

## ii. The "service to the employer" exception

The Board also relied on *Olsten-Kimberly Quality Care v. Parr*, 965 S.W.2d 155, 158 (Ky. 1998), in which a certified nursing assistant working for a home health care provider was injured in an automobile accident returning home from a patient home visit. The *Parr* court acknowledged that "work-related travel has come to mean travel which is for the convenience of the employer as opposed to travel for the convenience of the employee." *Id*. (citations omitted). As explained by our highest Court:

> [A]lthough the employer did not provide transportation and claimant was required to find [his] own mode of conveyance, "travel" was necessitated by, and in furtherance of, the business interests of the employer, and was an essential element required for completion of the essence of claimant's assignments. Therefore, it is clear that claimant was providing a service to the employer at the time of the incident and, hence, that this situation fell within the service to the employer exception to the going and coming rule of noncompensability.

*Id*. at 158. Because Lee's overall travel to the Maysville site was in furtherance of the business interests of the employer, Lee's injury falls squarely in the "service to the employer" exception to the "going and coming" rule. Lee was in Maysville solely at the behest of his employer and in his employer's service.

However, the analysis does not end here. Once the employee is deemed a traveling employee, the court must determine whether the injury

occurred when the employee was engaged in an activity which was a distinct departure or deviation on a personal errand.

> [W]hen travel is a requirement of employment and is implicit in the understanding between the employee and the employer at the time the employment contract was entered into, then injuries which occur going to or coming from a work place will generally be held to be work-related and compensable, except when a distinct departure or deviation on a personal errand is shown.

*Id.* at 157.

Generally, "injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." *Tichenor*, 396 S.W.2d at 797 (citations omitted). Lee's injury arose out of the necessity of eating dinner at a restaurant while away from his home in Louisiana. His presence in Kentucky was entirely for the benefit of Yates, who was responsible for Lee's presence there, was "abundantly aware" that Lee was in Kentucky solely for work-related purposes and acquiesced to such by providing him with a per diem. *See Dee Whitaker Concrete v. Ellison*, 641 S.W.3d 142, 148 (Ky. 2022). Consequently, Lee's injury was within the course and scope of his employment.

## <u>CONCLUSION</u>

For the foregoing reasons, we reverse the May 11, 2023 opinion of the Board affirming the opinion and orders of the ALJ and remand the case to the ALJ for further proceedings.

-13-

McNEILL, JUDGE, CONCURS.

CETRULO, JUDGE, DISSENTS AND FILES A SEPARATE OPINION.

CETRULO, JUDGE, DISSENTING:  With great respect and appreciation for the analysis and Opinion reached by the majority herein, I disagree and would affirm the Workers' Compensation Board.  Our review is limited to whether "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice."  *W. Baptist Hosp. v. Kelly,* 827 S.W.2d 685, 687-88 (Ky. 1992).  I do not find that the Board overlooked or misconstrued precedent, but rather it attempted to apply precedent to the somewhat unique facts of this case.  Likewise, the Board herein upheld the ALJ decision denying benefits because the ruling of the ALJ was supported by substantial evidence.  *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986).

Yates & Sons is a Mississippi-based construction company which obtains contracts nationwide and then hires workers to perform the contract.  Lee had not performed a job for Yates & Sons for approximately 30 years.  He had worked for other on-the-road construction companies across the country, although he and his family resided in Louisiana.  He became aware of the contract afforded Yates & Sons in Kentucky through a phone call in January 2020.  He drove his camper to Kentucky from Louisiana, doing so uncompensated, and set up a temporary residence in Ohio near the job site.  The testimony before the Board was

-14-

that he did not start work for them until he was hired at the Kentucky job site. Once hired, his job was as a general foreman on the construction site in Maysville. He was not required to travel from that location and worked the night shift from 7:00 p.m. to 7:00 a.m. He was paid an hourly rate for his services.[2] He had worked that shift the night before the accident and thus was not on his way to work when the accident occurred around 4:30 p.m. Rather, he left his home, on a motorcycle, met a friend, and was traveling to eat at a restaurant in Ripley, Ohio.

As the majority notes, the "going and coming" rule, well established in compensation law across the country, generally states that injuries sustained when workers are going to or coming from their worksite are **not** deemed to arise out of the course of employment. Such journeys are not deemed incidental to the employer's business. *Kaycee Coal Co. v. Short*, 450 S.W.2d 262 (Ky. 1970).

However, the Supreme Court has recognized two specific exceptions to the "going and coming" rule. The first, known as the "traveling employee" exception, occurs when:

1) a worker's employment requires travel, and,

2) when an injury occurs while the employee is in travel status, *unless the worker was engaged in a significant departure from the purpose of the trip*. *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456,

---

[2] As the majority notes, Lee did receive a $100.00 per diem rate in addition to his hourly rate.

462-63 (Ky. 2012).

In *Gaines Gentry*, the employer asked an employee to travel to yearling sales with its horses. The employee was injured while traveling back to Lexington from the sale. The Court held that the accident was compensable because he was in the act of completing the journey which he undertook for his employer. Clearly, the Court found that the employment task 1) required travel, and 2) that the injury occurred while he was in travel status and not engaged in a significant departure from the employer's purpose.

That "traveling employee" exception was further and more recently explained in *Dee Whitaker Concrete v. Ellison*, 641 S.W.3d 142 (Ky. 2022). In that case, the employee Ellison was leaving a jobsite where he was required to go for work and traveling back to the employer's premises in a company-owned vehicle, along with several other employees. The truck in which he was riding left the road and overturned, causing serious injuries. Both the ALJ and Board found his injuries to be compensable as falling within the "traveling employee" exception to the "going and coming" rule. The Supreme Court affirmed, noting that all of Ellison's work occurred away from the actual jobsite where he initially reported. Furthermore, the employer provided company vehicles and paid for gas for the vehicles that transported employees to the jobsites, providing substantial evidence that Ellison qualified as a "traveling employee."

-16-

In contrast, the ALJ and Board in this case found that Mr. Lee was not a "traveling employee" because travel was not required of him in order to do the job that he was hired to perform. Rather, he temporarily relocated to an area to take a job that had set hours and required no travel. He was not coming from or going to work when the accident occurred.

Similarly, I cannot agree that the facts of this case fall within the other exception to the "going and coming" rule, the "service to the employer" exception. In *Ellison*, the Court also noted that this exception applied to afford coverage, as Ellison's travel was "a service" to Whitaker Concrete because its employees would arrive to the jobsite on time and as a group. With the facts supporting the application of both of those exceptions in *Ellison*, the Supreme Court upheld the findings of the ALJ and Board and afforded coverage.

Both *Ellison* and *Gaines Gentry* relied upon an earlier decision of the Supreme Court *in Receveur Construction Company/Realm, Inc. v. Rogers*, 958 S.W.2d 18 (Ky. 1997). In *Receveur*, the Board and ALJ had again afforded compensation benefits, and both this Court and the Supreme Court affirmed. In *Receveur*, the employee (Rogers) had worked for the company for 13 years; was recently promoted to superintendent; and was issued a company truck that he was permitted to drive to and from both home and various job sites under his supervision. In addition, the company paid for gas for the vehicle. Rogers was

killed in a traffic accident while leaving a job site on his way home. The Court

upheld the award of survivor's benefits to his widow, finding that the employee's

death fell within the second exception to the "going and coming" rule, which

affords coverage for transitory activities of employees if they are providing some

service to the employer. In *Receveur*, Rogers' use of the company truck was of

benefit to the company since it allowed him to be productive for longer hours, and

the work itself required a truck. *Id.* at 19.

The majority also relied upon *Standard Oil Company v. Witt*, 283 Ky.

327, 151 S.W.2d 271 (1940) which upheld a decision for the claimant whose

employment required him to frequently travel throughout the state. The employer

paid for his lodging and meals, and he was *subject to call at all times*. He met his

death during the course of his employment when there was a fire in the hotel where

he was staying. Again, the facts are distinguishable from the facts herein. Witt

was necessarily required to travel and stay in different lodging to accomplish the

specific task at hand and was on call at all hours. *Id.*

It must be first determined that work-related travel is for the

convenience of the employer, such as a traveling nurse assistant for a home health

care provider. *Olsten-Kimberly Quality Care v. Parr*, 965 S.W.2d 155, 158 (Ky.

1998). *See also Brown v. Owsley*, 564 S.W.2d 843 (Ky. App. 1978). Based upon

our precedent, I cannot agree that Lee was a traveling employee or was providing a

service to the employer.

The majority herein found that Lee was in Maysville "at the behest of his employer and therefore in his employer's service." However, a reading of the cases clearly shows distinguishing facts that do not exist in this instance. Lee's motorcycle ride to a restaurant with a friend was nowhere close in time to his work shift; it was not part of the service for which he was employed; and it was not of any benefit to the employer.

While I certainly sympathize with Lee, who sustained serious injuries, the evidence was substantial that he was not even employed by Yates & Sons until after he had relocated to Kentucky. As the factfinder noted, he was not required to be available between his scheduled shifts. He was not driving a company vehicle. He was not on his way to the job site where he had worked for eight months. He was not performing a service for Yates & Sons, or driving a company vehicle. To extend coverage under these circumstances would require employers to provide workers' compensation coverage to an employee even during wholly recreational trips or activities if they simply assert that they relocated in order to secure the job. Lee relocated to Kentucky for his benefit, not for the employer's benefit.

Finally, I would further suggest that he was engaged in an activity that was a distinct departure from any arguably work-related travel. The cases suggest that the focus should be on the nature of the activity and the activity's purpose. A

personal errand and/or recreational activity such as riding motorcycles would not seem to require an employer's compensation.

In conclusion, Lee asserted that there is a dearth of Kentucky authority on the applicable exceptions to the "going and coming" rule and encouraged this Court to consider cases from other jurisdictions and "find that the Board's application of the traveling employee exception was too narrow."[3]  I agree with the majority Opinion that Kentucky law does provide sufficient guidance on this issue.  I simply disagree that the Board erred or misconstrued that precedent so as to require reversal.  I would affirm.

BRIEF FOR APPELLANT:

Scott C. Justice
Louisville, Kentucky

BRIEF FOR APPELLEE W.G. YATES & SONS CONSTRUCTION CO.:

Michael P. Neal
Louisville, Kentucky

---

[3] The Board, in its opinion, did consider cases from other jurisdictions, some of which would support the application of the traveling employee exception to these facts.  However, the Board distinguished those out-of-state cases relied upon by Lee, finding that his job, once he was hired, required no travel and that there was no inducement of travel-related expense or direction in the means of travel for him to relocate to the job site.  If the Commonwealth is to further expand the exception, the Supreme Court must do so.